UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY ECK,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>Defendant. | CASE NO. C05-0625-MJP-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Mary Eck proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) and Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1963.[1] She obtained a high school GED and some vocational training. Plaintiff previously worked as a daycare worker and order selector.

Plaintiff applied for SSI and DI on October 2, 2001, alleging disability beginning on August 1, 1998 due to anxiety, depression, polysubstance abuse, hepatitis C, and Bell's palsy. Plaintiff's applications were denied initially and on reconsideration, and she timely requested a hearing.

An ALJ held a hearing on January 20, 2004, taking testimony from plaintiff and vocational expert Anthony Newbauer. (AR 26-62.) On May 10, 2004, the ALJ issued a decision finding plaintiff not disabled. (AR 18-24.)

Plaintiff appealed the ALJ's decision to the Appeals Council. On February 18, 2005, the Appeals Council denied plaintiff's request for review. (AR 6-8.) Plaintiff appealed this final decision of the Commissioner to this Court. The Court held a hearing in this matter on November 15, 2005.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.


be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's general anxiety disorder, affective disorder, and chemical dependency severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform her past relevant work as an order puller. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ noted that the vocational expert at the hearing also found plaintiff capable of performing other jobs in the national economy.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ failed to properly consider opinions from Carla Hellekson, M.D., and John Slightam, M.D., other source evidence from Jean Scheideman, ARNP, and mental health therapist Jay Wellington, her own testimony, and whether her impairments met the criteria for listed impairments. Plaintiff further argues that the ALJ erroneously determined her RFC, erroneously found she could perform her past relevant work, and failed to meet the burden of showing she could perform other work in the national economy. Plaintiff asserts that this matter should be remanded for an award of benefits or, alternatively, for further proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

<u>Physicians' Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). *See also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) ( the opinions of specialists related to their areas of

specialization are given more weight than the opinions of non-specialists). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Lester*, 81 F.3d at 830. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

In this case, after describing the medical record, the ALJ stated the following:

> I do not give complete credence to the check mark reports from Dr. Slightam as they indicate significant changes in the claimant's functioning without any treatment notes suggesting that the claimant's condition was drastically worsening during treatment and sobriety. Dr. Hellekson indicated that the claimant needed continued substance abuse treatment, but did seem to indicate that she felt that the claimant would be able to function in a working environment within a year. The evaluation of the State Agency physicians is reasonable, reflecting problems that the claimant has in sustaining concentration due to her symptoms of anxiety.

(AR 20-23.)

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of examining physician Dr. Hellekson and treating physician Dr. Slightam,[2] both of whom found her markedly and moderately impaired in different respects. (*See* AR 221-24 (September 5, 2001 evaluation by Dr. Hellekson finding plaintiff markedly impaired in her ability to relate appropriately to co-workers and supervisors and to respond appropriately to and to tolerate the pressures and expectations of a normal work setting); AR 225-29 (October 4, 2001 report from Dr. Hellekson

---

[2] Although not clear from the record, the parties clarified the status of these physicians at the hearing.

rating plaintiff's Global Assessment of Functioning (GAF) at 30); AR 265-67 (May 1, 2003 statement from Dr. Slightam finding marked limitations in plaintiff's ability to ask simple questions or request assistance); AR 303-05 (January 15, 2004 statement from Dr. Slightam finding plaintiff markedly impaired in numerous respects)). Plaintiff asserts that the ALJ failed to state any convincing, or even legitimate, reason for rejecting the opinions of Drs. Hellekson and Slightam, and that their opinions should be credited as a matter of law.

The Commissioner argues that the ALJ relied on substantial evidence in accepting Dr. Hellekson's opinion that plaintiff could perform simple repetitive tasks and the opinions in Dr. Slightam's March 2003 narrative report that plaintiff had a GAF of 65 and only moderate limitations. (*See* AR 20, 21, 229, 312.) The Commissioner adds that the ALJ appropriately relied on substantial evidence from the reports of state agency reviewing physicians Gerald Peterson, Ph.D., and Stephen Goldberg, Ph.D. (*See* AR 230-47.)

In response, plaintiff notes that the ALJ never explicitly accepted any portion of the opinions of Drs. Hellekson and Slightam and, in fact, appeared to have rejected the opinions of Dr. Hellekson. She also points to the ALJ's failure to address evidence in the reports of both of these physicians, as well as in the assessment by Drs. Peterson and Goldberg, supporting the existence of disabling limitations.

1. <u>Dr. Slightam</u>:

The ALJ described Dr. Slightam's reports as follows:

> On March 6, 2003, Dr. Slightam completed a psychiatric evaluation of the claimant. The claimant reported that she had always been very shy, rarely calling attention to herself, not raising her hand in school, and being a social longer [stet] with only a few friends. She said that this had interfered with her ambitions and had created a fear of embarrassment. She did not speak at meetings, even in recovery and she did not

> engage in small talk before or after meetings. She did not get her driver's license until she was 28 years old. Dr. Slightam diagnosed a social anxiety disorder, intermittent depressive disorder and mixed chemical dependency, in current remission. He estimated her GAF at 65, suggesting mild limitations. He recommended that the claimant maintain Wellbutrin and start Lexapro. She was also referred for a physical examination (exhibit 17F, pp. 5-7).
>
> . . .
>
> On May 1, 2003, Dr. Slightam completed a Medical Source Statement indicating that the claimant had moderate limitations in understanding and carrying out detailed instructions, working with others, interacting with the public, accepting instructions and responding appropriately to criticism, and in responding appropriately to changes in the work setting. He indicated only one marked limitation and that was in asking a simple question or requesting assistance. He indicated that these limitations had been present since she was a teenager. He said that she had severe social anxiety disorder, which was slowly responding to treatment (Exhibit 14F, pp. 3-6).
>
> . . .
>
> On January 15, 2004, Dr. Slightam completed a Medical Source Statement indicating that the claimant had moderate to marked limitations in almost all areas of functioning. He said that the claimant had severe social anxiety disorder with marginal response to medication and that her limitations had been present since she was a child (Exhibit 16F).

(AR 21-22.)

The ALJ appropriately criticized Dr. Slightam's later reports by noting the absence of support in the record to suggest a dramatic decline in plaintiff's condition since Dr. Slightam's March 2003 assessment. (AR 23.) The ALJ also accurately contrasted the later reports as taking a check-the-box form, as compared to the March 2003 narrative assessment. (*Id.*) Additionally, the ALJ clearly did not reject all of Dr. Slightam's opinions, given the indication that he did "not give complete credence" to the later reports. (*Id.*) While plaintiff points to the statement in Dr. Slightam's notes as to her "slow [improvement]" (AR 301), she fails to identify notes which would explain the discrepancy between the earlier and later reports.

However, plaintiff argues that the ALJ should have contacted Dr. Slightam to clarify the

basis for his later opinions. 20 C.F.R. § 416.912(e) states: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . . .". *See also* SSR 96-5p (an adjudicator "must make 'every reasonable effort to recontact' the [treating] source for clarification of the reasons for the opinion.") The requirement to obtain additional information from a treating physician "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas*, 278 F.3d at 958. In this case, the undersigned concludes that the ALJ should have contacted Dr. Slightam for clarification. For this reason, and for the reasons described below, this matter should be remanded for further administrative proceedings.

2. Dr. Hellekson:

The ALJ described the evidence from Dr. Hellekson as follows:

> Dr. Hellekson completed a DSHS evaluation of the claimant in September 2001. She indicated that the claimant had polysubstance dependence with methamphetamine being her primary addiction, anxiety disorder and depressive disorder. She indicated that the claimant had marked limitations in relating to coworkers and supervisors and in tolerating the pressures and expectations of a normal work setting. The claimant reported insomnia and irritability (Exhibit 4F).
>
> Dr. Hellekson completed a psychiatric evaluation of the claimant on October 4, 2001. The claimant reported that she was very tired and did not have any energy. She was not sure whether this was due to sobriety, hepatitis C or other factors. She reported anxiety, which was worse in the morning. She denied panic attacks. She said that she had been clean and sober from around May 18, 2001 when she was in treatment at Cedar Hills. On mental status examination, she reported anxiety. She appeared depressed, but she minimized this. She could recall six digits forward and four digits backward. Dr. Hellekson diagnosed polysubstance abuse, social phobia, anxiety disorder and depression. She estimated the claimant's GAF at 30, suggesting very severe limitations. She felt that treatment would help the claimant and recommended a dual diagnosis program. Dr. Hellekson said that the claimant could do simple and repetitive tasks. She had a good attitude, but she needed to complete significant

> mental health work before trying to return to work. The claimant reported that she had always had problems managing time and getting ready and out the door had always been problematic for her (Exhibit 5F).

(AR 20.)

As reflected above, the ALJ noted only the following in assessing Dr. Hellekson's opinions: "Dr. Hellekson indicated that the claimant needed continued substance abuse treatment, but did seem to indicate that she felt that the claimant would be able to function in a working environment within a year." (AR 23.) The ALJ clearly did not reach this conclusion from Dr. Hellekson's September 2001 evaluation, in which the doctor estimated plaintiff's impairment would last a minimum of two years. (AR 224.) Instead, the ALJ appears to focus on the following language from Dr. Hellekson's October 2001 report:

> . . . She is able to do simple and repetitive tasks. At this time, her anxiety is interfering with her ability to do more detailed and complex tasks. She has a good attitude at this point and in this way would do well with supervisors, coworkers, and the public. However, she has significant mental health work to do over the next year before returning to a trial at work.

(AR 229). However, it is questionable whether this language can be reasonably interpreted to mean Dr. Hellekson believed plaintiff would be able to function in a working environment within a year. Indeed, Dr. Hellekson indicates plaintiff's return to work would be on a trial basis. (*Id.*) She also, in the same report, indicates marked limitations and a GAF of 30. (AR 228.) At the very least, the ALJ should have provided more extensive reasoning for his interpretation of Dr. Hellekson's opinions. Additionally, the undersigned agrees with plaintiff's assertion that the ALJ's later conclusion that plaintiff could perform simple and repetitive tasks does not necessarily reflect acceptance of Dr. Hellekson's opinions. Finally, the ALJ should have addressed the content of the third finding in Dr. Hellekson's October 2001 report as to plaintiff's ability, or lack thereof,

to maintain work on a consistent basis for a competitive workweek. (*See* AR 229.)

Yet, despite the ALJ's failings with respect to the opinions of Dr. Hellekson, this physician's opinions should not be credited as true. Even taking Dr. Hellekson's opinions as true, the evidence does not support a finding of disability. Instead, the ALJ should reassess the opinions of Dr. Hellekson on remand.

3. Drs. Peterson and Goldberg:

The ALJ described the opinions of Drs. Peterson and Goldberg as follows:

> Doctors for the State Agency felt that the claimant's anxiety was likely to interfere with her ability to carry out detailed but not simple instruction and it would also interfere with extended concentration. They noted that, although the claimant did not like groups, she had no real limitations in social functioning. They noted that the claimant had friend [stet] in high school who encouraged her to smoke marijuana. She managed a day care center out of her home during her marriage, and lat [stet] in her marriage she jointed [stet] a soccer team (exhibits 6F and 7F).

(AR 20.) As shown above, the ALJ found the opinions of these physicians reasonable and reflecting problems in concentration due to plaintiff's anxiety symptoms. (AR 23.)

The ALJ rendered a sufficient assessment of the opinions of Drs. Peterson and Goldberg. Plaintiff accurately notes that the ALJ did not acknowledge various moderate limitations identified by these physicians. ( *See* AR 240, 244-45.) Yet, the reviewing physicians modified these limitations in the narrative portion of the forms completed and the ALJ appropriately accounted for the remaining limitations in assessing plaintiff's RFC. ( *See* AR 246 ("Anxiety is likely to interfere with ability to carry out detailed instructions but not simple instructions. It would also interfere with extended concentration. CE also suggests punctuality would be a problem but this appears related to time management skills as opposed to psychological impairment.") and AR 23 (limiting plaintiff to simple tasks not requiring extended concentration)).

However, while the ALJ did not err in relying on the opinions of Drs. Peterson and Goldberg, this reliance does not overcome the errors with respect to Drs. Slightam and Hellekson. Given the contradictory opinions from Drs. Peterson and Goldberg, the ALJ was required to provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting the opinions of plaintiff's treating and examining physicians. *Lester*, 81 F.3d at 830-31 (quoting *Murray*, 722 F.2d at 502). In this case, as described above, the ALJ's only reason for the apparent rejection of Dr. Hellekson's opinions does not appear to be a rational interpretation of the record, and the opinions of Dr. Slightam require clarification.

Other Source Evidence

Plaintiff also alleges error with respect to the opinions of Jean Scheideman, ARNP, and mental health therapist Jay Wellington. She notes the ALJ's failure to explain the weight accorded, or to provide any reasons for rejecting, the opinions of these individuals. Plaintiff further argues that, given this failure, their opinions should be credited as true. *See Schneider*, 223 F.3d at 975-76.

The Commissioner asserts that the ALJ did consider the opinions of Scheideman and Wellington, but was not required to specify the relative weight accorded their opinions. The Commissioner also asserts that the ALJ accepted the opinions of Scheideman and Wellington to the extent they found support in the record, and distinguishes various cases relied upon by plaintiff.

Neither Scheideman, nor Wellington is an "acceptable medical source" under Social Security regulations. *See* 20 C.F.R. 404.1513. As such, their opinions must be given the weight of lay evidence. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to

disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ never indicated whether he accepted or rejected the opinions of Scheideman and Wellington, or provided any germane reasons for their rejection. Also, while the ALJ described Wellington's March 18, 2003 report, it is not at all clear, as suggested by the Commissioner, that the ALJ ever addressed Scheideman's May 23, 2002 report, wherein she assigned plaintiff a GAF of 40-45. ( *See* AR 20-21.) Additionally, the Commissioner primarily offers inappropriate post hoc rationalizations as to the apparent partial rejection of the opinions of Scheideman and Wellington. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ's failure to adequately address the other source evidence forms an additional basis for remanding this matter for further proceedings. However, as with Dr. Hellekson, because the record does not support a finding of disability even taking these opinions as true, the opinions of these individuals should not be credited as true.

<u>Credibility</u>

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

*Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ assessed plaintiff's credibility as follows:

> I find that the claimant's testimony is not entirely credible. While the claimant testified that she has never been able to support herself, she has been able to perform substantial gainful activity in work that involved some social activity such as managing a daycare or working in a grocery store. The treatment notes in the record do not indicate that the claimant's impairment is worsening.

(AR 23.) The ALJ later added: "The claimant is able to take care of her daily activities. She is able to attend group meetings such as narcotics anonymous. She is able to take the bus and attend her treatment program." *Id.* Also, in addressing the severity of plaintiff's impairments, the ALJ found no limitations in plaintiff's activities of daily living, noting her ability "to care for herself, cook, shop, and ride a bus," as well as the fact that she has a roommate and attends necessary appointments. (AR 22.)

Plaintiff argues that the ALJ erred in assessing her credibility and should credit her testimony as true. *See Lester*, 81 F.3d at 834 ("[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.' Rather, that testimony is also credited as a matter of law.") (internal citations omitted) (quoting *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)). She criticizes the ALJ's reference to her past ability to perform some work, noting she

has not been able to sustain substantial gainful activity for more than brief time periods since her alleged onset date. Plaintiff also contrasts the ALJ's statement that the treatment notes do not indicate a worsening of her impairment with her testimony as to her limitations, which she asserts is consistent with the opinions of Drs. Hellekson and Slightam.

The undersigned concludes that the ALJ provided sufficient reasons for partially rejecting plaintiff's testimony. The ALJ appropriately pointed to inconsistencies between plaintiff's testimony and her daily activities, as well as between her testimony and her past work experience. Also, although his statement as to the worsening, or lack thereof, of plaintiff's condition would benefit by further explanation, it does not present a reversible error.

Step Three

At step three, the ALJ concluded that plaintiff's mental impairments, either alone or in combination, were "not of the severity contemplated in the listings." (AR 22.) He continued:

> She has no limitations in her activities of daily living. She is able to care for herself, cook, shop, and ride a bus. She has moderate limitations in social functioning. She prefers to stay away from large groups and does not participate much in group therapy. However, she is able to shop, she has a roommate. She is able to take the bus, and attend necessary appointments. She has moderate limitations in concentration, persistence or pace, as her anxiety tends to interfere with her ability to sustain concentration. She has had one episode of decompensation with her overdose, but that was in the context of continuing substance abuse. She has not abused substances other than nicotine and marijuana in the last year. She is able to function outside a highly supportive living environment.

(*Id.*)

Plaintiff maintains that the ALJ erred in failing to adequately explain his reasoning and in determining that her impairments did not meet the criteria for Listing 12.04 (affective disorder) and/or Listing 12.06 (anxiety disorder). Plaintiff asserts that evidence from Drs. Hellekson and

Slightam support the conclusion that she meets the "B" criteria for both listings, in that she has marked difficulty in maintaining social functioning and in maintaining concentration, persistence, or pace, and the "C" criteria for listing 12.04 in that she suffers from "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate[.]" 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 12.04C.

The Commissioner rejects plaintiff's interpretations of the opinions of Drs. Hellekson and Slightam. The Commissioner further asserts that plaintiff proffers no plausible theory as to how her combined impairments are medically equivalent to the criteria for a listed impairment, let alone to meet her burden of establishing medical equivalence. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (plaintiff bears the burden at step three; "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."); *Lewis*, 236 F.3d at 514 (noting, *inter alia*, that plaintiff "offered no theory, plausible or otherwise, as to" how his combined impairments equaled a listing). The Commissioner adds that no medical source opined that plaintiff met a listing and that Drs. Peterson and Goldberg explicitly determined that she did not meet a listing. (*See* AR 240-41.)

As argued by the Commissioner, plaintiff fails to meet her burden at step three by merely pointing to records from Drs. Hellekson and Slightam and the "C" criteria for one of the listings. Additionally, it is not entirely clear that Dr. Hellekson's reports reflect the opinion that plaintiff meets the criteria for any listed impairment. (*See* AR 221-29.) For these reasons, the ALJ's step three decision does not, by itself, warrant remand. However, to the extent required by a more

detailed evaluation of the medical opinions in this case, the ALJ should revisit this issue on remand.

RFC

The ALJ determined that plaintiff had the RFC to "perform simple tasks that do not require extended concentration." (AR 23.) Plaintiff argues that the ALJ erroneously determined her RFC by failing to properly consider the opinions of Drs. Hellekson and Slightam, the opinions of Scheideman and Wellington, her own testimony, and the moderate limitations assessed by Drs. Peterson and Goldberg.

As discussed above, the ALJ appears to have appropriately assessed the opinions of Drs. Peterson and Goldberg, as well as plaintiff's credibility. However, because the above-described errors with respect to Drs. Hellekson and Slightam and the other source evidence may implicate the ALJ's RFC finding, it should be reassessed on remand.

Past Relevant Work

Plaintiff asserts error at step four, arguing that the ALJ's determination that she could perform her past relevant work as an order puller was based on an erroneous RFC finding. The Commissioner asserts that plaintiff fails to meet her burden at step four, and that the ALJ properly posed a hypothetical based on limitations supported by the record and, based on the testimony of the vocational expert, determined plaintiff could perform her past relevant work. (*See* AR 23, 55-57.)

The ALJ's step four assessment read as follows:

> The evidence in this case establishes that the claimant has past relevant work as an order puller. This is an unskilled job that the claimant was able to perform for six months. She did this job full time and earned more in the year that she did this job

> than in any other year (Exhibit 3D). The vocational expert testified that a person with the claimant's limitations could perform this past work. My question to the vocational expert included limitations to lifting 50 pounds, but since she has no severe physical impairment, this limitation is due more to her physical ability than to any specific limitation. The vocational expert said that, if the claimant's testimony were fully credible, the claimant would be able to do her job as an order puller.

(AR 23.) The vocational expert did testify that, taking her testimony as fully credible, plaintiff would be able to perform her past relevant work. (AR 56.) However, he was not asked whether an individual with an RFC to perform simple tasks not requiring extended concentration would be able to perform that work. (*See* AR 56-57.) Therefore, contrary to the ALJ's assertion, the vocational expert never testified as to a person with the limitations found by the ALJ. Given the absence of such testimony, the ALJ's step four finding is not supported by substantial evidence and requires further vocational expert testimony on remand.

<u>Step Five</u>

Finally, plaintiff maintains that the ALJ failed to meet his burden of showing she could perform other work in the national economy. Plaintiff again points to errors in the ALJ's assessment of the various medical and other source opinions as necessarily implicating the ALJ's step five determination. The Commissioner asserts that, as an alternative to his step four finding, the ALJ properly posed a hypothetical based on limitations supported by the record and, based on the testimony of the vocational expert, determined plaintiff could perform other work at step five.

In his decision, the ALJ noted that the vocational expert "also identified a number of other jobs that a person with the claimant's limitations could perform." (AR 23.) In the hearing, the vocational expert identified three positions – fish cleaner, tree sorter, and egg washer – in response to a hypothetical as to a woman with plaintiff's age, educational background, work

experience, and with "problems with substance abuse," "subjective complaints of anxiety, panic attacks and the residual symptoms of those panic attacks," but with medication controlling the symptoms of those conditions. (AR 56-57.) In response to various hypotheticals proffered by plaintiff's counsel, including a variety of different limitations, the vocational expert responded that it would be very difficult for plaintiff to maintain gainful employment. (AR 58-61.)

Although noting the vocational expert's identification of other jobs plaintiff could perform, it does not appear the ALJ rendered a formal finding at step five. (*See* AR 23-24.) Moreover, as noted above, the ALJ did not specifically ask the vocational expert about an individual limited to simple tasks not requiring extended concentration. As may be required, the ALJ should obtain vocational expert testimony and render a step five determination on remand. In so doing, the ALJ must proffer a complete hypothetical to the vocational expert – including all identified limitations. Additionally, if the ALJ does determine plaintiff is disabled on remand, he should determine whether drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. § 416.935(a).

**CONCLUSION**

For the reasons described above, this matter should be REMANDED for further administrative proceedings. A proposed order accompanies this Report and Recommendation.

DATED this 2nd day of December, 2005.

Mary Alice Theiler
United States Magistrate Judge